```
                   UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY
_____
                                    :
RICHARD MICHAEL MATHISEN,           :
                                    :
          Petitioner,               :   Civ. No. 18-1435 (NLH)
                                    :
     v.                             :   OPINION
                                    :
DAVID ORTIZ,                        :
                                    :
          Respondent.               :
_____ :
```

APPEARANCES:

Richard Michael Mathisen
58457-037
Fort Dix
Federal Correctional Institution
Inmate Mail/Parcels
EAST: P.O. BOX 2000
FORT DIX, NJ 08640

    Petitioner Pro se

John Andrew Ruymann, Chief, Civil Division
Elizabeth Pascal, AUSA
Office of the U.S. Attorney
401 Market Street
4th Floor
P.O. Box 2098
Camden, NJ 08101

    Counsel for Respondent

HILLMAN, District Judge

    Petitioner Richard Michael Mathisen, a prisoner incarcerated at FCI Fort Dix, in Fort Dix, New Jersey, filed this Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, challenging a disciplinary action that resulted in a loss of

good time credits. (ECF No. 1). Respondent filed an Answer opposing relief, (ECF No. 6), and Petitioner filed a Reply and Supplemental Reply, (ECF Nos. 8, 11). For the reasons set forth below, the Court will deny the Petition.

I.  BACKGROUND

On February 3, 2016, the United States District Court for the District of Maryland sentenced Petitioner to 108 months in prison, with three years of supervised release, for conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846. (United States v. Mathisen, No. 8:15-cr-00003 (D. Md.), ECF No. 124).

On April 23, 2017, staff at Fort Dix issued an incident report charging Petitioner with use of any narcotics or intoxicants, in violation of Disciplinary Code 112.[1] (ECF No. 6-2, at 9). The incident report provides as follows:

> On April 23, 2017 at 5:40 A.M., I Officer Rivera conducted a breathalyzer test on inmate Mathisen, Richard Reg. 58457-037. Inmate complied to administering the breathalyzer and tested positive with a reading of .060. A second breathalyzer test using the same ALCO-SENSOR 3 serial #1405190 was conducted at 5:55 AM with a positive reading of .069. The on duty operation's Lieutenant was notified.

---

[1] Code 112 prohibits the "[u]se of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff." 28 C.F.R. § 541.3 (Table 1).

2

(Id.).

On that same day, staff delivered the report to Petitioner at 11:55 p.m., and advised him of his rights. Petitioner responded, "no comment." (Id. at 10). After the investigation, staff referred the incident report to the Unit Disciplinary Committee ("UDC").

The UDC held an initial hearing on April 27, 2017. At the hearing, Petitioner made the following statement, "I was in the hospital the night before. The doctor said I had a concussion." (Id. at 9). After the hearing, due to the seriousness of the offense and because the UDC recommended greater sanctions than it could impose, the UDC referred the matter to a Discipline Hearing Officer ("DHO"). Petitioner received a notice of disciplinary hearing, and officials advised him of his rights. Petitioner signed an acknowledgement of those rights and indicated that he did not wish to call any witnesses or to have a staff representative. (Id. at 12, 14).

On an unspecified date, the DHO held an initial hearing, at which Petitioner stated that he had collapsed the night before the breathalyzer tests and went to a hospital. (Id. at 16). Petitioner alleged that the hospital gave him medication that resulted in higher breathalyzer readings. (Id. at 21). After hearing those allegations, the DHO postponed the hearing to

obtain information from the Bureau of Prisons' ("BOP") Health Services Unit. (Id. at 16, 21).

The DHO reconvened the hearing on June 30, 2017, and staff again advised Petitioner of his rights. Petitioner again testified that the night before the incident, he had collapsed in his unit, and staff transported him to a hospital for medical treatment. (Id. at 16). He further stated that "he did drink the day before and they did a breathalyzer on him," and he apparently "took some sips to take the edge off." (Id.). The parties dispute, however, whether Petitioner asked the DHO to review the breathalyzer's calibration logs or otherwise challenged the accuracy of the device.

The DHO considered Petitioner's statements in reaching a decision, as well as the incident report, the alcohol testing log, Petitioner's medical records pertaining to his hospitalization, and a memorandum from a staff member describing the incident that lead to Petitioner's hospitalization. That memorandum stated that concerned inmates told a staff member that Petitioner's "condition was possibly drugs and alcohol related," and that "some kind of pills were likely taken." (Id. at 19).

After considering the evidence, the DHO concluded that Petitioner committed the act of use of any drugs or alcohol, in violation of Code 112. The DHO then issued the following

4

sanctions: (1) revocation of 40 days of good conduct time; and (2) loss of commissary privileges for 90 days. Petitioner received a copy of the DHO report on October 4, 2017. (ECF No. 1-3, at 21).

On October 30, 2017, Petitioner appealed to the BOP's Regional Office. On or about November 3, 2017, the Regional Director rejected the appeal as untimely, as the appeal was due within 20 days of Petitioner's receipt of the DHO report, which was October 24, 2017. (ECF No. 6-2, at 6). Petitioner contends that two prison lockdowns and copy machine issues made it "extremely difficult" to forward the necessary documents to the Regional Office. (ECF No. 1-5, at 4).

He also alleges that he tried to mail the appeal earlier on October 21, 2017, but that the "initial mailing was . . . returned for lack of postage but resubmitted that same night," and that he "would have mailed it sooner if not for the cause[s] of delays." (Id. at 11). In response, the Regional Office determined that the "dates of the lockdown did not cause the late filing of [his] appeal," and that he should submit a staff verification if the untimely filing was not his fault. (ECF No. 1-3, at 23).

Thereafter, Petitioner appealed to the Central Office on December 5, 2017. The Central Office rejected that appeal as untimely and agreed that his regional appeal was also untimely.

5

(ECF No. 1-3, at 5). The Central Office also provided Petitioner with an opportunity to submit a memorandum from staff stating that the late filing was not his fault, but Petitioner was unable to secure that document.

Petitioner then filed the instant Petition, alleging: (1) that he was denied due process when the DHO refused to review the breathalyzer's calibration logs and (2) that the rejections of his administrative appeals violated his First Amendment right to seek redress. (ECF No. 1). Respondent filed an Answer opposing relief. (ECF No. 6). Petitioner filed a Reply and Supplemental Reply. (ECF Nos. 8, 11).

II. DISCUSSION

    A. <u>Legal Standard</u>

A habeas corpus petition is the proper mechanism for a federal prisoner to challenge the "fact or duration" of his confinement. <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 498–99 (1973); <u>see also</u> <u>Muhammad v. Close</u>, 540 U.S. 749 (2004). A prisoner challenging a disciplinary action resulting in the loss of good time credits may bring such claims under § 2241, "as the action could affect the duration of the petitioner's sentence." <u>Queen v. Miner</u>, 530 F.3d 253, 254 n.2 (3d Cir. 2008).

    Under 28 U.S.C. § 2243:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an

6

> order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

Courts hold pro se pleadings to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Courts must construe pro se habeas petitions and any supporting submissions liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998).

    B.  Analysis

        1. Exhaustion

The Court will first address the issue of exhaustion as it appears from the face of the Petition that Petitioner has not exhausted his administrative remedies.  Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, federal prisoners may not typically challenge the execution of their sentences, under § 2241, until they have exhausted all available administrative remedies. See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000).

To determine whether a prisoner has exhausted his administrative remedies, the Court refers to the agency's grievance procedures and rules, in this case, the BOP. See Jones v. Bock, 549 U.S. 199, 218 (2007).  The BOP Administrative Remedy Program, 28 C.F.R. § 542.10, et seq., provides for review

7

of inmate grievances at the institutional, Regional, and Central Office levels.

If an inmate is not satisfied with a DHO's decision, he may appeal to the Regional Director within 20 days, and then appeal that decision within 30 days, to the Central Office, General Counsel. 28 C.F.R. § 542.15(a).  An appeal to the General Counsel is the final administrative appeal. Id.  The General Counsel shall respond within 30 days, and if the inmate does not receive a response within that time period, he may consider it a denial. 28 C.F.R. § 542.18.

With those principles in mind, Petitioner concedes that he has failed to exhaust his administrative remedies but argues that the Court should excuse that failure. (ECF No. 1-5, at 10-14).  Petitioner contends that prison lockdowns, inmate copier issues, and mailing delays contributed to his late appeal.  In turn, because the BOP rejected his appeals as untimely, he was unable to exhaust his administrative remedies.

Turning first to the lockdowns, the lockdowns occurred from "October 1, 2017, through . . . October 5, 2017," and "[n]ormal operations resumed on Friday, October 6, 2017." (ECF No. 1-3, at 2, 17).  Petitioner received the DHO report on October 4, 2017, and accordingly, the lockdowns accounted for only 2 of his 20 days to file an appeal.

8

With regard to the copier issues, Petitioner does not specify when the copy machine was unavailable. Nor does he allege that that machine was broken from the entire period between the end of the lockdowns on October 6th, and the day he mailed his appeal on October 21st.

According to Petitioner, he needed the copier because his appeal required four copies of his administrative remedy form, (ECF No. 1-5, at 12), but he did not obtain the original remedy form until October 20, 2017, 16 days after he received the DHO report, and 14 days after the end of the lockdowns. (ECF No. 1-3, at 3 (noting on the top right-hand corner, the date of delivery)).

Similarly, Petitioner complains of the approximately 9 days it took for his appeal to arrive by mail at the Regional Office, which resulted in his appeal arriving 6 days late. (ECF No. 1, a1 1-5, at 11). Such a delay, however, might not have affected his appeal if, at the very least, he requested his original remedy form at some time prior to October 20th. Nor does Petitioner allege that he requested the form at any point between October 6th and October 20th.

Indeed, as the Third Circuit has noted, the BOP's appeal "deadlines have been made deliberately long to allow sufficient mail time." Trotman v. Smith, 796 F. App'x 764, 766 (3d Cir. 2020) (quoting BOP Program Statement 1300.16, Administrative

9

Remedy Program (Jan. 6, 2014)); Zuniga v. Chamberlin, No. 17-792, 2018 WL 1385208, at *7 (M.D. Pa. Mar. 19, 2018). Accordingly, "[i]nmates should mail their [a]ppeals promptly after receiving a response to ensure timely receipt." E.g., Zuniga, 2018 WL 1385208, at *7 (quoting BOP Program Statement 1300.16).

Although Petitioner maintains that he "would have mailed [his appeal] sooner if not for" the lockdowns and copier issues, he fails to account for the 14 days between the end of the lockdown on October 6th and the date he mailed his appeal on October 21, 2017. (ECF No. 1-5, at 11). Petitioner cannot rely on conclusions without supporting them with specific and particularized facts. See, e.g., Palmer v. Hendricks, 592 F.3d 386, 393 (3d Cir. 2010); United States v. Dawson, 857 F.2d 923, 928 (3d Cir. 1988).

To the extent Petitioner contends that the Court should consider his appeal filed on the date he placed it into the mail, the Court rejects that argument. In essence, Petitioner contends that the prisoner mailbox rule should apply in this case. Generally, under that rule, a prisoner's complaint or petition "is deemed filed at the moment he delivers it to prison officials for mailing." Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998).

The Third Circuit, however, has rejected the prison mailbox rule where, as here, "statutory or regulatory schemes . . . clearly required actual receipt by a specific date." Fisher v. U.S. Dep't of Justice, No. 07-2273, 2008 WL 8683024, at *3 (D.N.J. May 9, 2008) (quoting Longenette v. Krusing, 322 F.3d 758, 764 (3d Cir. 2003)).

Under the BOP's regulations, a request or appeal "is considered filed on the date it is logged into the Administrative Remedy Index as received." 28 C.F.R. § 542.18; see, e.g., Snisky v. Ortiz, No. 17-7731, 2020 WL 2520419, at *3 (D.N.J. May 18, 2020) (quoting Schreane v. Thomas, No.14-0246, 2014 WL 5493190, at *4 (M.D. Pa. Oct. 30, 2014)); Wall v. Holt, No. 06-0194, 2007 WL 89000, at *3–4 (M.D. Pa. Jan. 9, 2007). "Both the Code of Federal Regulations and the BOP's Administrative Remedy Program are unambiguous as to" the requirement of actual receipt, and as a result, the prisoner mailbox rule does not apply in this case. Snisky, 2020 WL 2520419, at *3 (quoting Schreane, 2014 WL 5493190, at *4).

For all of those reasons, it appears that Petitioner's lockdown, copier, and mailing issues did not prevent him from filing a timely appeal.  Nor does Petitioner allege specific facts that account for his entire time to appeal or otherwise excuse his late filing.  Taken together, Petitioner has failed to exhaust his administrative remedies, and the Court will not

11

excuse that failure.  Accordingly, the Court will deny the Petition for failure to exhaust.

### 2. Due Process Claims

That said, the Court will alternatively deny the Petition on the merits.  Petitioner first argues that he was denied due process when the DHO refused to review the breathalyzer's calibration logs.  Petitioner assumes that the logs were exculpatory and argues that without those logs, his breathalyzer results were unreliable.  In response, Respondent contends that Petitioner received all the necessary due process protections, and that in any case, there is "some evidence" to support the DHO's findings and decision.

Under our jurisprudence, before a prisoner may lose good time credits, officials must afford him the following due process protections: (1) a written notice of the charges at least twenty-four hours prior to a hearing; (2) an opportunity to call witnesses and present evidence in his defense; (3) an opportunity to receive assistance from an inmate representative; (4) a written statement of the evidence relied on and the reasons for the disciplinary action; and (5) an appearance before an impartial decision making body. See Crosby v. Piazza, 465 F. App'x 168, 171–72 (3d Cir. 2012) (per curiam) (citing Wolff v. McDonnell, 418 U.S. 539, 563–71 (1974)).

12

Additionally, in order to comport with due process, there must be "some evidence in the record" to support a disciplinary officer's findings and decision to revoke good time credits. Gonzalez v. Hollingsworth, No. 15-2993, 2016 WL 1732376, at *2 (D.N.J. May 2, 2016) (quoting Denny v. Schultz, 708 F.3d 140, 144 (3d Cir. 2013)). The "some evidence" standard is one of appellate review and is not the same as the "burden of proof in a prison disciplinary proceeding." Id.

With those principles in mind, Petitioner argues that the DHO's refusal to review the breathalyzer calibration logs violated his due process right to present evidence. In this context, prisoners do not have an absolute right to present evidence. "Prison officials may limit the inmate's presentation for reasons of relevance, necessity, or undue hazard to institutional safety or correctional goals." Bellamy v. Hollingsworth, No. 13-7783, 2014 WL 714905, at *4 (D.N.J. Feb. 21, 2014) (citing Wolff, 418 U.S. at 566-67). Prison officials must justify their refusal, but it is not necessary to do so at the time of the hearing and may provide their explanation to the court, at a later date. Id. (citing Ponte v. Real, 471 U.S. 491 (1985)).

"Moreover, in this context, an inmate who challenges a prison disciplinary hearing result based upon an alleged denial of his right to present evidence must show some actual prejudice

13

resulting from the prison's exercise of discretion." See, e.g., Moreta v. Marionna, No. 15-1915, 2017 WL 2463087, at *4 (M.D. Pa. June 7, 2017) (citing Pachtinger v. Grondolsky, 340 F. App'x 772, 777 (3d Cir. 2009) (denying habeas petition where inmate failed to show prejudice resulting from the absence of witness' testimony)).

In the present case, the parties dispute whether Petitioner requested review of the calibration logs at the DHO hearing. Rather than hold an evidentiary hearing on that issue, the Court will assume for the purpose of this Opinion that: (1) Petitioner requested those logs; (2) the DHO denied that request; and (3) that the BOP failed to present a justification for that refusal.

Petitioner's claim fails, however, because he has not shown prejudice.  Petitioner assumed that the calibration logs were exculpatory and would show that staff had not maintained or calibrated the breathalyzer according to the BOP's policies. The Court has reviewed the logs, which show instead that staff calibrated the device at least once a month, in accordance with BOP policies. (ECF No. 6-4, at 19).  Additionally, the most recent calibration occurred approximately twenty days before Petitioner's tests. (Id.)

In his Replies, Petitioner maintains that the calibration logs do not contain enough information to determine whether staff had properly calibrated the machine.  Petitioner complains

14

that the logs contain only the dates of calibration, and lack the results of the calibrations, who performed the calibrations, and a litany of other information[2] that Petitioner argues is necessary to show proper calibration. (ECF No. 8, at 8-10; ECF No. 11, at 4-6).

    While Petitioner contends that the calibration logs "'[do] not adequately explain . . . that the device was properly calibrated'" it is also true that "'nothing in the calibration log[s] casts doubt on the fact that the breathalyzer was calibrated.'" Ross v. Ortiz, No. 18-1578, 2020 WL 3046291, at *4 (D.N.J. June 8, 2020) (quoting Mendez v. Bell, No. 16-02123, 2018 WL 4039321, at *3 (D. Conn. Aug. 23, 2018)). Stated differently, as in the Ross case cited above, the logs would not have impacted Petitioner's DHO hearing. See id. Accordingly, to the extent Petitioner claims that the DHO's refusal to review the calibration logs violated his due process rights, the Court will deny that claim for failure to establish prejudice.

---

[2] Petitioner also disputes whether these logs are for the correct breathalyzer, because in his view, the logs should have serial numbers that match the device in question. (ECF No. 8, at 10; ECF No. 11, at 5). As the accompanying declaration of Special Investigative Services Technician Brian Virgillo explains, however, the BOP used only one breathalyzer in Petitioner's compound, the West Compound. (ECF No. 6-3, at 1-2). The logs indicate that they are for the "WEST COMPOUND" breathalyzer. (ECF No. 6-4, at 19).

15

Turning then, to whether the DHO had "some evidence" to arrive at his decision, the DHO considered, among other things, the incident report, the breathalyzer testing logs, and Petitioner's confession that he sipped alcohol the day before. (ECF No. 6-2, at 16-17).  Both of Petitioner's tests showed blood alcohol levels well in excess of the .02 percent necessary[3] to show that Petitioner consumed alcohol. (ECF No. 6-2, at 20 (showing that Petitioner had two positive readings at .06 and .069)).

The core of Petitioner's arguments appears to be that his blood alcohol readings were higher than he anticipated, and therefore the breathalyzer, or the officer administering the test, must have been unreliable.  Alternatively, Petitioner argues that the medication he received at the hospital the day before must have increased his blood alcohol level beyond what he expected.

None of these arguments change the fact that Petitioner confessed that he "took some sips" of alcohol "to take the edge off." (ECF No. 6-2, at 17).  Petitioner repeated his confession in his regional appeal, (ECF No. 1-3, at 3 ("I admit that prior to the Test being conducted on 4/22/17 I had sipped some alcohol.")), and in his Reply, (ECF No. 8, at 12 ("Petitioner

---

[3] According to BOP policies, a "reading of .02 or higher . . . will be considered a positive reading." (ECF No. 6-4, at 2-3).

16

admitted only to taking a sip the day before.")).  Indeed, he did not deny using alcohol at the DHO hearing, or in his Petition. (See ECF No. 1; ECF No. 6-2, at 17).

Petitioner appears to believe that the breathalyzer tests were necessary for him to violate Code 112.  Even without those tests, however, Petitioner's confessions provided the DHO with "some evidence" to conclude that Petitioner violated Code 112, which forbids the "[u]se of any . . . alcohol." 28 C.F.R. § 541.3 (Table 1).

As for Petitioner's evidence, the DHO had the right to assign little or no weight to his allegations: (1) that the testing officer failed to ask Petitioner if he ate or drank anything prior to the test; (2) that Petitioner's medications could have increased his blood alcohol level; or (3) that the breathalyzer was unreliable in other cases[4] at Fort Dix.

Whether the breathalyzer was unreliable in other cases or whether "flawed testing procedures gave rise to unreliable results goes to the weight of the evidence, and given the highly deferential standard of review," such claims do not provide a basis to overturn a DHO's decision. Ross, 2020 WL 3046291, at *4

---

[4] Petitioner does not appear to have raised this claim at the DHO hearing. (See ECF No. 6-2, at 17; ECF No. 1-3, at 2-4 (revealing that Petitioner did not identify this argument in his appeals)).

17

(emphasis removed) (quoting Hernandez v. Sepanek, No. 12-51, 2013 WL 556378, at *6 (E.D. Ky. Feb. 11, 2013)).

Fundamentally, Petitioner asks the Court to reweigh the evidence, but that is not the duty of this Court when reviewing a DHO decision. In this context, federal courts do not weigh the evidence or assess credibility. Lang v. Sauers, 529 F. App'x 121, 123 (3d Cir. 2013). Accordingly, the Court will alternatively deny Petitioner's due process claims on the merits.

### 3. First Amendment Claims

To the extent Petitioner argues that BOP employees improperly rejected his administrative appeals, refused to provide him with a timeliness excusal memorandum, or otherwise impeded the administrative appeal process, as independent violations of his rights under the First Amendment, the Court rejects those claims.

Generally, the First Amendment confers a "right to petition the Government for redress of grievances," which generally involves access to the courts. Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 294 n.17 (3d Cir. 2018); Horsh v. Clark, No. 17-316, 2019 WL 1243009, at *5 (W.D. Pa. Mar. 18, 2019). The First Amendment does not, however, "impose any affirmative obligation on the government to listen, to respond or . . . to recognize" a grievance. E.g., Smith v. Arkansas State Highway Emp., Local

18

1315, 441 U.S. 463, 465 (1979); see also Minnesota State Bd. Community Colleges v. Knight, 465 U.S. 271, 285 (1984) ("Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications.").

Similarly, "there is no constitutional right to administrative review of prison disciplinary proceedings." See, e.g., Bowen v. Thomas, No. 14-0037, 2016 WL 4271743, at *1 (M.D. Pa. Aug. 15, 2016) (citing Garfield v. Davis, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983)); Platt v. Brockenborough, 476 F. Supp. 2d 467, 469-70 (E.D. Pa. 2007) ("prisoners have no constitutional right to appeal the results of a disciplinary hearing"); cf. Gittens v. Scholtz, No. 18-2519, 2019 WL 3417091, at *4 (D.N.J. July 29, 2019) (quoting Horsh, 2019 WL 1243009, at *5) (noting, in the § 1983 context, that there is no constitutional right to an "administrative grievance process or any particular relief . . . through such process."). Accordingly, the Court will alternatively deny Petitioner's First Amendment claims on the merits.[5]

---

[5] Such claims also fail as due process challenges under the Fifth Amendment. As the Third Circuit has held, inmates have "no constitutional right to a grievance procedure" under the Fifth Amendment. See, e.g., Caldwell v. Beard, 324 F. App'x 186, 189 (3d Cir. 2009).

19

III. CONCLUSION

    For the foregoing reasons, the Court will deny the Petition.  An appropriate Order follows.


Dated: September 22, 2020         s/ Noel L. Hillman
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.